UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE:<br><br>Hayes Iron & Metal, Inc.,<br><br>    Debtor.<br>_____<br><br>William B. Rhodes, Chapter 11<br>Trustee for Hayes Iron &<br>Metal, Inc.,<br><br>    Plaintiff, and<br><br>Branch Banking and Trust<br>Company,<br><br>    Intervening Plaintiff,<br><br>v.<br><br>Florida Metal Trading, Inc.,<br><br>    Defendant. | Case No. 13-10157C-11G<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Adversary No. 13-2058 |

### MEMORANDUM OPINION

This adversary proceeding came before the court on May 14, 2014, for hearing on the plaintiff's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure to dismiss the defendant's counterclaims for failure to state a claim upon which relief can be granted. For the reasons that follow, the court has concluded that the motion to dismiss should be granted.

The following facts are alleged in the defendant's counterclaims. The Debtor is a full service ferrous and non-ferrous metal recycling and salvage operation. The defendant is in

the business of buying and selling scrap metal and began transacting business with the Debtor in March of 2008 and continued to transact business with the Debtor for the next five years. During the course of the five-year relationship between the defendant and the Debtor a level of trust and confidence was established between the parties. In February of 2011, the defendant and the Debtor began discussing the formation of a joint business venture. During these discussions, the parties agreed to form Virginia Wire Processing, LLC ("VWP") to conduct the new business and agreed that VWP would be owned jointly and equally by the defendant and the Debtor. The parties also discussed purchasing a piece of real property from which VWP would operate. A suitable site was located at 461 Gypsum Road, Danville, Virginia. The parties agreed to form FMH Investments, LLC ("FMH"), another co-owned business formed to acquire ownership of the Gypsum Road property. The purchase price for the real property was $300,000. The defendant agreed to pay for half of the purchase price and the Debtor agreed to pay for the remaining half. In furtherance of the agreement to purchase the real property, the defendant wired the Debtor the sum of $150,000 in April of 2011; these funds were entrusted to the Debtor to be used to purchase the Gypsum Road property. The parties agreed that the property would be transferred to FMH when it was purchased. The real property was in fact wrongly, and contrary to the agreement and direction of the

defendant, purchased in the name of the Debtor on or about April 18, 2011. The Debtor, despite its representations to the contrary and in contradiction of the parties' agreement, never transferred title of the real property to FMH. Title to the real property remains in the sole name of the Debtor. In support of a claim for a resulting trust, the defendant alleges that equity requires the imposition of a resulting trust over an undivided one-half interest in the Gypsum Road property or any proceeds from the sale of such property in favor of the defendant so that the intention of the parties is carried into effect such that the defendant and the Debtor equally share in the profits and proceeds of the Gypsum Road property. In support of a claim for a constructive trust, the defendant alleges that in order to prevent the injustice and fraud that will occur if the Debtor is allowed to retain sole legal ownership of the Gypsum Road property, the court, acting as a court of equity, should impose a constructive trust upon such property or any proceeds from the sale of the property in favor of the defendant in an undivided one-half interest in the property or an amount equal to one-half of the net proceeds derived from any sale of the property. In support of a claim for an equitable lien, the defendant alleges that, given the relations of the defendant and the Debtor, and their principals, general considerations of what is right and just requires that the court, acting as a court of equity, impose an equitable lien upon the

Gypsum Road property or any proceeds from the sale of such property in favor of the defendant in an undivided one-half interest in the property or an amount equal to one-half of the net proceeds derived from any sale of the property.

The plaintiff argues that because the defendant did not file a proof of claim for a resulting trust, constructive trust or equitable lien prior to the claims bar date, those claims are barred and therefore the counterclaims fail to state a claim upon which relief can be granted. In response, the defendant argues that the motion to dismiss should be denied because under section 541(d) of the Bankruptcy Code the Gypsum Road property or its proceeds can be removed or recovered from the bankruptcy estate. Alternatively, the defendant argues that no proof of claim was required because under Rule 7001 of the Federal Rules of Bankruptcy Procedure, the relief sought in the counterclaims involves a determination of the validity, priority and extent of an interest in property which must be sought in an adversary proceeding. Even if the court were to accept these arguments, the defendant's counterclaims, as explained below, nonetheless fail to state a claim upon which relief can be granted.

The defendant alleges that under applicable state law, it is entitled in this proceeding to have a resulting trust, constructive trust or equitable lien declared and imposed with respect to the Gypsum Road property. As a result of the entitlement to this

equitable relief, the defendant maintains that on the petition date the Debtor held only bare legal title and that section 541(d)[1] therefore operates to exclude the property from the bankruptcy estate. Section 544(a)(3), on the other hand, provides that the trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is avoidable by . . . a bona fide purchaser of real property . . . that obtains the status of a bona fide purchaser and has perfected such transfer at the time of commencement of the case, whether or not such a purchaser exists." Even if a resulting trust, constructive trust or equitable lien could be established by the defendant in this proceeding, the issue that arises is whether the Trustee in the underlying Chapter 11 case ("Trustee"), as a bona fide purchaser for value under section 544(a)(3), is entitled to prevail over any rights the defendant would have as the beneficiary of such equitable relief. As the court noted in <u>Mayer v. United States (In re Reasonover)</u>, 236 B.R. 219, 227 (Bankr. E.D. Va. 1999), while there is a split of authority regarding whether section 541(d) trumps the trustee's

---

[1] Section 541(d) provides that property in which the debtor holds, as of the commencement of a case, only legal title and not an equitable interest, "becomes property of the estate under subsection (a)(1) and (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

avoidance powers, the majority view[2] is that section 541(d) does not do so. Having carefully reviewed the authorities on both sides of the issue and this court's earlier decisions,[3] this court agrees with the reasoning and conclusion of the court in Reasonover that section 541(d) does not trump a bankruptcy trustee's rights and powers under section 544(a)(3) and that a bankruptcy trustee is entitled to prevail over any resulting trust, constructive trust or equitable lien that is established by a party claiming such relief.

As pointed out in Reasonover, most of the decisions reaching a contrary result do not discuss or take into account the 1984 amendments to section 541(d). Id. at 227. Prior to those amendments, section 541(d) referred to property that became property of the estate under "subsection (a)." The 1984 amendments

---

[2]See, e.g., Belisle v. Plunkett, 877 F.2d 512 (7th Cir. 1989); Chbat v. Tleel (In re Tleel), 876 F.2d 769 (9th Cir. 1989); Patel v. Rupp, 195 B.R. 779 (D. Utah 1996); In re Ebel, 144 B.R. 510 (D. Colo. 1992); In re Great Plains Western Ranch Co., 38 B.R. 899 (Bankr. C.D. Cal. 1984).

[3]Decisions of this court such as In re Hearne, No. 02-81181, 2003 WL 479113 (Bankr. M.D.N.C. Feb. 21, 2003) and In re Surplus Furniture Liquidators of High Point, Inc., 199 B.R. 136 (Bankr. M.D.N.C. 1995), involving personal property and sections 544(a)(1) and (2), are distinguishable since section 544(a)(1) and (2) do not grant the trustee the status of a bona fide purchaser of real property. While In re Chriscoe, No. 03-12584, 2003 WL 23211566 (Bankr. M.D.N.C. Oct. 31, 2003), involved real property, the real property was subject to a judgment granting a constructive trust that was recorded prior to the filing of the bankruptcy petition. While not adequately explained in the opinion, the recorded judgment enabled the judgment creditor to prevail over the trustee, not because section 541(d) trumped the trustee's rights under section 544(a)(3), but because the recorded judgment lien had priority over the trustee as a BFP.

significantly modified the language of section 541(d) by deleting "subsection (a)" and replacing it with "subsection (a)(1) or (2)." This court agrees with the conclusion that "[b]y excluding from the operation of § 541(d) those portions of § 541(a) other than subsections (a)(1) and (a)(2), Congress clearly signaled its intention that the trustee's avoidance powers would trump claims based solely on the debtor's lack of equitable title." Id. 227-28.

The decision in Reasonover also supports the position that under section 544(a)(3) no transfer is required in order for a bankruptcy trustee to have the rights and powers of a bona fide purchaser of real property. As pointed out in Reasonover, the text of section 544(a)(3) not only does not limit the trustee's avoidance powers to transfers "by" the debtor, it is not even limited to "transfers." Id. at 228. In accord Mullins v. Burtch (In re Paul J. Paradise & Assocs., Inc.), 249 B.R. 360, 369 (D. Del. 2000). What section 544(a)(3) says is that the trustee has "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is avoidable by . . . a bona fide purchaser of real property . . ." (emphasis added). The fact that this preamble is phrased in the disjunctive, is a strong indication that the trustee may exercise any "rights and powers" of a bona fide purchaser even in the absence of a transfer. "In other words, the trustee occupies the position of a bona fide purchaser and takes real property free and clear of any unperfected liens or

interests." Reasonover, 236 B.R. at 228. This means that in this proceeding, if a bona fide purchaser of the Gypsum Road property from the Debtor would have acquired a superior right and title as against the defendant, then so does the Trustee.

While a bankruptcy trustee's rights and powers as a bona fide purchaser of real property are created or conferred by federal bankruptcy law, the extent of the trustee's rights as a bona fide purchaser are measured by applicable state law. E.g., Crestar Bank v. Neal (In re Kitchen Equip. Co. of Va.), 960 F.2d 1242, 1245 (4th Cir. 1992)("While federal law confers on the trustee the power to avoid some transfers and obligations of the debtor, state law controls the exercise of the power."); Havee v. Belk, 775 F.2d 1209, 1218 (4th Cir. 1985)("[W]hile it is the federal law which provides the trustee with his 'strong-arm' power, his exercise of such power and its extent are governed entirely by the applicable state law.").

Since the Gypsum Road real property is located in the Commonwealth of Virginia, the controlling state law is the law of Virginia. See In re Morris, 147 B.R. 929 (Bankr. S.D. Ill. 1992); Restatement (Second) of Conflict of Law § 233 (1971). Virginia law fully supports the conclusion that even if the defendant were granted a resulting trust, constructive trust or equitable lien in this proceeding, the Trustee's rights as a bona fide purchaser of real property are superior to the rights the defendant would

acquire under such a resulting trust, constructive trust or equitable lien. The applicable Virginia law is succinctly stated in the Reasonover decision:

> The question therefore resolves to whether, under Virginia law, a bona fide purchaser of real property takes free of inchoate equitable claims. Under the Virginia recording statutes, unrecorded conveyances and deeds of trust are "void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors." Va.Code Ann. § 55-96(a)(1). Furthermore, it is well established in Virginia that a bona fide purchaser takes property free of any latent equity against it. See, e.g., Snyder v. Grandstaff, 96 Va. 473, 31 S.E. 647, 648 (1898)(bona fide purchaser not affected by a latent equity of reformation grounded on mutual mistake); Ransome v. Watson's Administrator, 145 Va. 669, 134 S.E. 707 (1926)(resulting trust not good against a bona fide purchaser); Pair v. Rook, 195 Va. 196, 77 S.E.2d 395 (1953)(constructive trust). To obtain the status of a bona fide purchaser, one must have neither actual nor constructive notice of any defects in the chain of title. Roanoke Brick & Lime Co. v. Simmons, 2 Va. Dec. 70, 20 S.E. 955, 956 (1895)("The purchaser is bound not only by actual, but also constructive notice, which is the same in effect as actual notice."). In making a purchase, the buyer must search the chain of title, as required by the recording statutes, and exercise a degree of care when examining the records to ensure that the grantor has good title and that the property is free of encumbrances. "The great weight of authority is to the effect that the recordation of an instrument gives constructive notice of all the facts expressly stated in the instrument and other matters therein suggested which might be disclosed upon prudent inquiry." Chavis v. Gibbs, 198 Va. 379, 94 S.E.2d 195, 197 (1956).

236 B.R. at 232-33.

On the commencement date, title to the Gypsum Road real property was vested in the Debtor, and a search of the grantor index would have disclosed no conveyances from the Debtor nor any judgment, lien or other encumbrance in favor of the defendant. Thus, under Virginia law, the rights of the Trustee, as a hypothetical bona fide purchaser of the Gypsum Road real property, are superior to and preclude any equitable relief that the defendant could acquire in this proceeding.

Since section 544(a)(3) operates to make the relief sought in the counterclaims unavailable, the defendant has failed to state a claim upon which relief could be granted. The plaintiff's motion to dismiss therefore should be granted. An order so providing is being entered contemporaneously with the filing of this memorandum opinion.

This 22nd day of May, 2014.

_William L. Stocks_
WILLIAM L. STOCKS
United States Bankruptcy Judge